## In re COFFIN (two cases).

### (Circuit Court of Appeals, Second Circuit. February 26, 1907.)

#### Nos. 168, 172.

1. BANKRUPTCY—PROPERTY HELD BY BANKRUPT IN TRUST—ENFORCEMENT OF
TRUST.
Where none of the creditors of a bankrupt extended credit to him in
reliance on his ownership of property, which, while standing in his name,
was in fact held by him in trust for others, his trustee takes no greater
interest or right therein than he himself had, and, if the trust was en-
forceable in equity against him, it is equally so as against his trustee.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 193,
225.]

2. SAME.
The stockholders in a western land company advanced it money pro
rata to pay its debts, taking a mortgage therefor on certain of its lands.
This mortgage was foreclosed, and a part of the lands were bought in by
one of the stockholders, and a part by the trustee in the mortgage, who
subsequently conveyed the same without consideration to such stock-
holder, who undertook to sell the lands and distribute the proceeds. His
title having been questioned by purchasers, quitclaim deeds were executed
to him by the corporation and the other stockholders, and a decree of court
was also procured quieting his title as against them. He continued to make
sales from time to time, depositing the cash proceeds with his own funds,
but keeping account of the same, and made distributions among the stock-
holders of such proceeds and notes taken. He at all times by such dis-
tributions and by written statements to the other stockholders recognized
the fact that he held the property as trustee. He subsequently became
bankrupt, still having a part of the lands undisposed of and certain of the
proceeds in his possession which he previously undertook to separate from
his own funds by purchasing a draft therefor payable to himself as trustee,
which draft came into possession of his trustee in bankruptcy. It ap-
peared that none of his creditors extended credit on the faith of his owner-
ship of such lands or their proceeds. *Held*, that by his acts in so recog-
nizing the rights of the other stockholders after he became vested with
absolute title to the property he created a new trust therein in their
favor, which would have been enforceable by them in equity, and that it
was also enforceable in the bankruptcy court as against his trustee.

Petition to Review and Appeal from Order of the District Court of
the United States for the District of Connecticut.
See 146 Fed. 181.

This cause comes here upon petition to review an order of the District Court,
District of Connecticut, enjoining the bankrupt from making any conveyances
of certain real estate in western states, standing in his name, and directing
him to turn over certain drafts and cash to the trustee in bankruptcy.

John M. Ragan and Clarence E. Bacon, for appellants.
H. L. Hotchkiss, Howard Taylor, and William H. Ely, for re-
spondents.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). In 1890 a
Nebraska corporation, the Real Estate & Live Stock Association, of
which the bankrupt and his wife were stockholders, being financially
embarrassed, sought a loan from its stockholders. The stockholders

advanced $50,000 ($18.75 per share of their respective holdings), and took as security a mortgage upon numerous parcels of real estate in Nebraska and Wyoming. The mortgagee named in the instrument was one Alonzo Clark as trustee. The money not being paid, Clark brought suit in foreclosure, and under proper decree the real estate in Nebraska was sold and bought in by him and conveyance thereof made to him by the "master commissioner under foreclosure proceedings." The real estate in Wyoming was bought in by Coffin. In November, 1900, Clark conveyed all the real estate to Coffin, who thereupon undertook to sell and dispose of the same and to distribute the proceeds ratably to the beneficiaries, for whom he was acting as trustee. Upon the sale of one parcel in Nebraska, the prospective purchasers questioned Coffin's title to the lands. Thereupon each of the parties interested and the association executed quitclaim deeds to Coffin of their respective interests in all said lands both in Nebraska and Wyoming. Moreover, a friendly suit was brought in Nebraska by Coffin against the association and all the other parties in interest to quiet the title, and decree was entered therein June 2, 1902, declaring that the title of Coffin in and to said lands was absolute as against any of the parties defendant. On or prior to that date the quitclaim deeds were all filed.

Subsequent to June 2, 1902, Coffin sold and conveyed from time to time portions of said real estate in both states, and received in payment therefor certain amounts of cash, which were deposited with his personal account in a bank in Middletown, and certain notes and mortgages which were taken in his individual name for part payment of such sales. From the amounts so received he paid between July 30 and October 30, 1902, to the parties who had advanced the funds to the association 30 per cent. of the amount so loaned or advanced by them, together with 8 per cent. interest thereon. Part of these payments were made in cash and part by the transfer to them of notes secured by mortgages received in part payment for the lands so sold. Subsequently to these payments there had accumulated a large sum over and above disbursements from sales of the land in question, which had been deposited in his bank account. On November 14, 1903, he drew his entire deposit ($4,800) from the bank, took $1,000 in cash which he kept in a drawer at his office, and added to it a draft of $1,915.86 which he had received from his agent in the West as proceeds of the sale of part of said lands, and bought a draft on New York to the order of himself as trustee of $7,715.86. This draft and some others sent from the West by said agent have come into the possession of the trustee in bankruptcy. On December 2, 1903, Coffin was adjudicated a bankrupt on his own petition.

Various technical matters have been eliminated during the argument, and the single question is presented whether the several parcels of real estate yet unsold prior to December 2, 1903, were held by Coffin in trust for the beneficiaries, and therefore did not pass to his trustee in bankruptcy, or whether they were a part of his individual estate to be disposed of by the trustee for the benefit of his creditors. That question may appropriately be answered by this court. The

bankrupt and the trustee (representing all the creditors) duly appeared. The record would seem to indicate that there was no appearance for the so-called "beneficiaries," who claim interest in the western lands, but it was asserted upon the argument that the record is defective in that respect, and, with the consent and concurrence of all parties, the beneficiaries formally entered their appearance in this court. It appears from the referee's findings of fact that credit was not given or extended by any creditors upon the strength of Coffin being the owner of the lands and property in question. This simplifies the situation, because under such circumstances the trustee in bankruptcy stands in no better position than that in which the bankrupt stood on the day the petition was filed, and it will be necessary only to determine whether, if there had been no bankruptcy, the beneficiaries could in a court of equity have established their right to have him dispose of these lands for their benefit and distribute the proceeds ratably among them.

The express trust created by the deeds to Clark as trustee and from Clark to Coffin, and resultant upon the furnishing of the money by the beneficiaries, was terminated by the delivery of the quitclaim deeds and by the entry of the decree of the Nebraska court on June 2, 1902. Coffin already held the legal title, and each quitclaim deed conveyed to him every right, title, and interest, legal and equitable, which the beneficiary executing it had to convey. At the close of this transaction Coffin was the absolute owner with no outstanding interest in and no resultant trust to any one. But, since the property was his absolutely, he was entirely free to do what he pleased with it. He could convey it to one, or more, or all of his fellow stockholders, or to a stranger. He could convey it to any one he chose in trust to make any disposition of it he might prescribe so long as such trust did not violate the law or the statutes of the state. He could make a declaration of trust which would constitute himself the trustee for any such purpose. What did he do after he became the absolute owner on June 2, 1902? Were his acts such that as between himself and the other stockholders —to whom undoubtedly he owed a moral obligation to distribute a proportionate part of the proceeds—a court of equity would hold that he had created a new trust in their favor? It seems to us that, upon this record, such question must be answered in the affirmative.

In the first place we have the sworn statement of Coffin himself made June 15, 1904, that although he held the apparent legal title to the several parcels of land, the same was really in trust for the benefit of the several individuals whom he enumerated and called beneficiaries. This statement was made after bankruptcy, and no act of his at that time, no position which he might take, could alter the status established by the bankruptcy. But it is not as an act of the bankrupt that this statement of June 15, 1904, is important. It is an historical narrative of a transaction long prior to the bankruptcy, and, with such a sworn "declaration against interest" in the case, it is difficult to see how a court of equity could refuse such relief as would give the applicants the benefit of the trust which he thus declared he had created. Nor is this declaration a mere afterthought. Coffin's whole

course of conduct shows that he considered himself a trustee for his fellow stockholders. The referee has found that between July 30 and October 30, 1902, he collected from the sale of these lands and distributed to them 30 per cent. of the amounts originally advanced by them. Nor were his declarations merely oral. The referee finds that:

"In and about October, 1903, he wrote to some and made statements to others of the parties named in the petition, and therein called beneficiaries, that he soon hoped and intended to pay another dividend of from 30 to 40 per cent. to claimants who had advanced funds to the Nebraska Real Estate & Live Stock Association, part of which was to be paid in cash and part with notes secured by mortgages on the land in question. See Exhibits 73 to 131."

Examination of the exhibits referred to shows that the declarations of Coffin as to the equities of the beneficiaries were much more explicit than the above quotation would indicate. Thus on August 2, 1902, he writes to one of the beneficiaries to whom he had sent three notes received as part payment for a parcel of land just sold:

"A party in Nebraska has made me an offer of $950 for each $1,000 note, but I have replied that the notes are not mine. If you should wish to accept the offer, please so advise when returning the receipt."

No one can peruse these exhibits without being convinced that subsequent to June 2, 1902, Coffin undertook to manage these lands, to sell them, and to distribute the proceeds in the interest of all who had originally invested in the enterprise. No doubt the fact that there was such a trust was kept secret, so that no other prospective purchaser might question the title to any property he sold, but it was communicated to the others over Coffin's signature repeatedly, and, since the rights of no one else had supervened during this period of secrecy, a court of chancery would have enforced their equities had application been made to do so just before the petition in bankruptcy was filed. As the district judge expresses it, "the acts of Mr. Coffin after the decree [of June, 1902] undoubtedly put the stockholders in a position where they could, if there had been time, have established such a relation"; i. e., a trust relationship. That being so, the trustee in bankruptcy, who is not the grantee of the bankrupt for a valuable consideration, but a transferee by act of the law, who takes his property subject to all existing equities, cannot successfully dispute their right to establish such relationship in an appropriate tribunal. And, since all parties are here, this court may properly dispose of the controversy.

As to the various drafts referred to supra, the evidence is not sufficiently clear to enable us to determine how much of them represents proceeds of sales of land and how much represents general funds of the bankrupt. Upon remand of the cause the District Court will be able to determine those questions.

The order is reversed, and cause remanded, with instructions to the District Court to vacate the injunction which now prevents Coffin as trustee for the "beneficiaries" from continuing to sell this western land and to distribute the proceeds between them. As to the drafts and cash, disposition can be made of them in conformity with the views expressed in this opinion.